UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MOMOCON, LLC, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 21-2386 (RC) |
| | : | |
| v. | : | Re Document Nos.: 19, 21 |
| | : | |
| SMALL BUSINESS ADMINISTRATION, | : | **REDACTED** |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION TO DISMISS AND, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

Plaintiff MomoCon, LLC, filed this suit against Defendants the U.S. Small Business Administration and its Administrator, Isabella Casillas Guzman (collectively, "SBA"), to review SBA's denial of MomoCon's application for Shuttered Venue Operators Grant ("SVOG") funds. MomoCon moves for summary judgment that SBA's denial was arbitrary and capricious in violation of the Administrative Procedure Act ("APA") at least because SBA granted SVOG applications made by entities similar to MomoCon and did not appropriately consider the relevant evidence. SBA moves for summary judgment that this Court lacks jurisdiction over this suit due to sovereign immunity and that its decision was not arbitrary or capricious. For the reasons given below, the Court grants MomoCon's motion and denies SBA's motion.

**II. BACKGROUND**

The SVOG program was established by Congress to—as the name suggests—provide grants to shuttered venue operators. *Shuttered Venue Operators Grant*, U.S. Small Bus. Admin., https://www.sba.gov/funding-programs/loans/covid-19-relief-options/shuttered-venue-operators-

grant.  One category of potential grant recipients is "a live venue operator or promoter, theatrical producer, or live performing arts organization operator."  15 U.S.C. § 9009a(a)(1)(A).  To fall into that category, an applicant must be "an individual or entity that, as a principal business activity, organizes, promotes, produces, manages, or hosts live concerts, comedy shows, theatrical productions, or other events by performing artists," among other requirements.  *Id.* § 9009a(a)(3)(A)(i)(I).

"MomoCon is a festival organization that creates an annual 4-day event" to "bring[] together fans of Japanese Anime, American Animation, Comics, Video Games, and Tabletop Games to celebrate their passion by costuming/cosplay, browsing the huge exhibitors hall, meeting celebrity voice talent, designers, and writers behind their favorite shows, games, and comics and much . . . more," including live performances.  Administrative Record ("AR") at 56, 1675, ECF No. 27-1;[1] Mot. Dismiss & in the Alternative for Summ. J. & Opp'n Pl.'s Mot. Summ. J. ("Defs.' Opp'n & Mem.") at 6–7, ECF Nos. 21 & 22.  Due to the COVID-19 pandemic, MomoCon canceled its 2020 and 2021 events.  Pl.'s Mem. P. & A. Supp. Mot. Summ. J. ("Pl.'s Mem.") at 5, ECF No. 19.

In April 2021, MomoCon applied for a SVOG award.  *Id.* at 3.  After some back and forth—including a denial, an administrative appeal (in which MomoCon changed its category from "live performing arts organization to live venue promoter"), a denial of the appeal, filing of this case, and voluntary remand to SBA on SBA's request—the parties arrived at what they both treat as the final and operative denial.  *Id.* at 3–7.  Namely, on October 15, 2021, SBA stated that it had conducted "a thorough and comprehensive review of [MomoCon's] appeal" and decided that its "application remains declined."  AR at 1696.  The denial states that the application was

---

[1] A public, redacted version of the AR was filed at ECF No. 28.

2

denied "at least in part" for failure to "meet the principal business activity standard for the entity type under which applied," citing 15 U.S.C. § 9009a(a)(3)(A). *Id.* According to SBA, MomoCon

> principally focuses on presenting exhibits, participatory events, and interactions with professionals who work in their favored areas of fandom. While MomoCon does include a few bona fide performing arts events such as musical concerts, it is clear from the record that such events are minimal in number compared to other events at the convention, and they do not factor significantly in the way the convention is presented. These events represent a secondary or sideline activity rather than the principal business of the convention.

*Id.* at 1696–97. MomoCon's appeal referenced other companies that both received SVOG grants and, according to MomoCon, put on "fan conventions" similar to MomoCon's. Pl.'s Mem. at 6; *see also* AR at 86–87 (citing companies' websites and describing similarities to MomoCon).

## III.  LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," and "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, to survive a Rule 12(b)(1) motion to dismiss, a plaintiff bears the burden of establishing that a court has jurisdiction over his claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998) (standing and Article III jurisdiction); *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007) (subject-matter jurisdiction). To determine whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003). "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. District of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013).

Although Rule 56 requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), "in APA cases, the summary judgment standard functions slightly differently, because the reviewing court generally . . . reviews the agency's decision as an appellate court addressing issues of law," *Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F. Supp. 3d 62, 74 (D.D.C. 2018) (cleaned up). Stated another way, "[t]he entire case on review is a question of law, and only a question of law." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). Accordingly, "whether the issue is one of reviewability or otherwise, the court must limit its review to the administrative record and the facts and reasons contained therein to determine whether the agency's action was consistent with the relevant APA standard of review." *Pol'y & Rsch., LLC*, 313 F. Supp. 3d at 74 (cleaned up). However, judicial review under the APA may go beyond the administrative record "when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) (internal quotation marks omitted) (quoting *Com. Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998)).

### IV. ANALYSIS

MomoCon moves for summary judgment that SBA's denial of MomoCon's SVOG application violated the APA because it was arbitrary and capricious. Pl.'s Mem. at 8–16. SBA moves for summary judgment that the Court lacks jurisdiction over this case due to sovereign immunity and that SBA's decision was not arbitrary and capricious. Defs.' Opp'n & Mem. at 10–20. For the reasons given below, the Court holds that (1) SBA has not demonstrated that the Court lacks jurisdiction, and (2) SBA's decision was arbitrary and capricious. MomoCon's

4

motion is therefore granted, and this matter is remanded to SBA for supplementation of the administrative record and further proceedings in line with this opinion.

### A.  Jurisdiction

SBA moves to dismiss this case for lack of jurisdiction.  *See* Defs.' Opp'n & Mem. at 10–12.  Specifically, SBA argues that the Court lacks jurisdiction to hear this case because MomoCon sues for money damages and the only relevant waiver of the United States' sovereign immunity does not cover actions for "money damages."  5 U.S.C. § 702.  For the reasons below, the Court holds that it has jurisdiction to hear this case.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  The APA waives sovereign immunity for certain claims:

> An action in a court of the United States *seeking relief other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702 (emphasis added).  "[M]oney damages represent compensatory relief, an award given to a plaintiff as a substitute for that which has been lost; specific relief in contrast represents an attempt to restore to the plaintiff that to which it was entitled from the beginning."  *Am.'s Cmty. Bankers v. FDIC*, 200 F.3d 822, 829 (D.C. Cir. 2000).  Declaratory and injunctive relief do not generally constitute money damages.  *Robles v. Kerry*, 74 F. Supp. 3d 254, 260 (D.D.C. 2014).  Specific relief, including "monetary relief sought as a statutory entitlement," also does not constitute money damages.  *Id.*

The Supreme Court has provided guidance for determining whether monetary relief constitutes money damages.  In *Bowen v. Massachusetts*, 487 U.S. 879 (1988), the Court addressed whether federal district courts had "jurisdiction to review a final order of the Secretary

5

of Health and Human Services refusing to reimburse a State for a category of expenditures under its Medicaid program." *Id.* at 882. The Court concluded that the APA did not preclude judicial review because (1) to the extent that the plaintiffs sought declaratory and injunctive relief, such requests were not for monetary damages, and (2) "the monetary aspects of the relief that the State sought are not 'money damages.'" *Id.* at 893. On the latter point, the Court explained that damages "are intended to provide a victim with monetary compensation for an injury," while equitable actions provide specific relief such as reinstatement of an employee or the recovery of specific "monies." *Id.* Judicial relief that entails payment of money from one party to another is not necessarily money damages. *Id.* For example, "relief that orders a town to reimburse parents for educational costs that Congress intended the town to pay is not 'damages.'" *Id.* at 893–94.

The Court quoted heavily from a D.C. Circuit opinion where "Maryland asked the district court for a declaratory judgment and for injunctive relief 'enjoin[ing] defendants from reducing funds otherwise due to plaintiffs, or imposing any sanctions on such funds for alleged Title XX violations.'" *Id.* at 894 (quoting *Md. Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985)). That opinion explained that damages "*substitute* for a suffered loss" while specific remedies are an "attempt to give the plaintiff the very thing to which he was entitled." *Id.* (quoting *Md. Dep't of Hum. Res.*, 763 F.2d at 1446). In that case, "Maryland [was] seeking funds to which a statute allegedly entitles it, rather than money in compensation for the losses, whatever they may be, that Maryland will suffer or has suffered by virtue of the withholding of those funds." *Id.* (quoting *Md. Dep't of Hum. Res.*, 763 F.2d at 1446).

The *Bowen* Court concluded that the suit was not seeking "*compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking

6

to enforce the statutory mandate itself, which happens to be one for the payment of money." *Id.* at 900. That made the payment a form of specific relief rather than money damages. *Id.*; *see also ITServe All., Inc. v. Cuccinelli*, 502 F. Supp. 3d 278, 284 (D.D.C. 2020) ("If what Plaintiffs really seek is 'specific relief' for money owed, *Bowen* instructs, the federal district court has jurisdiction over the claim under the APA." (quoting *Bowen*, 487 U.S. at 910)). In a later case, the Supreme Court explained that *Bowen*'s analysis did not turn on whether the relief sought was equitable. Equitable relief could constitute money damages if it was "merely a means to the end of satisfying a claim for the recovery of money," such as a lien, as opposed to "giv[ing] the plaintiff the very thing to which he was entitled." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, at 262–63 (1999) (quoting *Bowen*, 487 U.S. at 895).

None of the remedies requested by MomoCon constitute money damages. The closest requests to money damages made by MomoCon are those for the Court to order SBA to "award" and "grant" specific dollar amounts of funds to MomoCon. Am. Compl. at 10–11, ECF No. 14-1. But these would not constitute money damages because they would not serve as substitutes for harms. MomoCon does not "request monetary compensation for a legal wrong suffered; rather, it [seeks] the very thing which it has been deprived of which happened to be the payment of money." *Esch v. Yeutter*, 876 F.2d 976, 981 (D.C. Cir. 1989); *see also McKoy v. Spencer*, 271 F. Supp. 3d 25, 33 (D.D.C. 2017) (explaining that damages such as "back pay, front pay, lost benefits and compensatory damages for emotional distress and hardship" are money damages because they are not "based on any specific legal entitlement to particular monies" and instead "would be substitutes for Plaintiff's alleged losses"). As the Supreme Court put it in *Bowen*, MomoCon is not seeking "*compensation* for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate

7

itself, which happens to be one for the payment of money." *Bowen*, 487 U.S. at 900.  In other words, MomoCon argues that it is statutorily entitled to SVOG funds (or at least consideration for SVOG funds in accordance with the APA), not that it suffered damages in the amount of funds it applied for.  *See ITServe All., Inc.*, 502 F. Supp. 3d at 285–86 (explaining that plaintiffs' request for return of illegally collected fees is a request for money damages because it was a request to be "made whole" due to actions exceeding congressional authorization, as opposed to showing "entitlement to the return of excess fees under a statute").

SBA focuses on MomoCon's request for "monetary relief" or "money recovery," *e.g.*, Defs.' Opp'n & Mem. at 11–12, but the relevant question is whether MomoCon requests "money *damages*," 5 U.S.C. § 702 (emphasis added).  As explained above, the monetary relief MomoCon seeks is not damages.  It therefore is not problematic that MomoCon requests "a very specific amount" of money.  Defs.' Opp'n & Mem. at 12.  SBA attempts to distinguish this case from *Bowen*'s guidance that "relief that orders a town to reimburse parents for educational costs that Congress intended the town to pay is not one for damages."  Reply Supp. Defs.' Mot. Dismiss & for Summ. J. ("Defs.' Reply") at 3, ECF No. 25.  To do so, SBA argues that, instead of asking the Court to "order SBA to pay that which Congress intended to pay MomoCon under the SVOG statute," MomoCon instead "asks that the Court involve itself in SBA's decision-making and direct SBA to make two very specific awards."  *Id.*  This is impermissible, according to SBA, because "order[ing] SBA to pay MomoCon very specific monetary awards" is "outside the bounds of the waiver of sovereign immunity under the APA."  *Id.* at 4.  But SBA does not explain why ordering SBA to pay specific amounts here would be considered money damages.  Similarly, SBA attempts to distinguish *Anselmo v. King*, 902 F. Supp. 273 (D.D.C. 1995), because those plaintiffs sought "funds to which a statute allegedly entitles them," while here,

MomoCon seeks a court order for SBA "to pay an exact amount of monetary relief." Defs.' Reply at 4 (quoting *Anselmo*, 902 F. Supp. at 275). Again, SBA does not explain why requesting specific dollar amounts turns otherwise non-damages relief, such as money to which a party is entitled by statute, into money damages. For these reasons, the Court holds that MomoCon does not seek money damages, the APA's waiver of sovereign immunity applies, and SBA has therefore not shown that this Court lacks jurisdiction.

### B. Arbitrary and Capricious

The parties dispute whether SBA acted arbitrarily or capriciously in denying MomoCon's application for SVOG funds. Under the APA, an agency decision should be upheld unless it is unsupported by substantial evidence, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The parties' arguments focus on two issues: (1) SBA's failure to explain why similar companies' applications were granted, and (2) SBA's determination that MomoCon does not have the right principal business activity. For the reasons given below, the Court holds that SBA acted arbitrarily and capriciously on both issues.

#### 1. Similar Companies

SBA's failure to explain why it treated MomoCon differently than other potentially similar companies renders SBA's decision arbitrary and capricious. SBA must therefore supplement the administrative record and explain how MomoCon is meaningfully different than the other companies or explain why SBA has changed how it decides SVOG applications.[2]

---

[2] SBA suggests that it might seek repayment of funds granted to MomoCon's competitors. *See* Defs.' Opp'n & Mem. at 17–18 ("While AWA did in fact receive an initial SVOG award, SBA is reviewing the company's application to determine if SVOG funds were improperly made. . . . Indeed, should SBA determine that the award to AWA was inconsistent with the statute based on the review of AWA's application, the appropriate remedy is not to award MomoCon relief in this action, but for SBA to seek the repayment of funds by filing a complaint against AWA, which is a remedy that is well-within the Agency's discretion.").

9

"[A]n agency may not treat like cases differently." *Eagle Broad. Grp., Ltd. v. FCC*, 563 F.3d 543, 551 (D.C. Cir. 2009); *see also Westar Energy, Inc. v. Fed. Energy Regul. Comm'n*, 473 F.3d 1239, 1241 (D.C. Cir. 2007) ("A fundamental norm of administrative procedure requires an agency to treat like cases alike."). "At the very least, 'an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion it may cross the line from tolerably terse to intolerably mute.'" *Airmark Corp. v. FAA*, 758 F.2d 685, 692 (D.C. Cir. 1985) (quoting *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970)); *see also Westar Energy, Inc.*, 473 F.3d at 1241 ("If the agency makes an exception in one case, then it must either make an exception in a similar case or point to a relevant distinction between the two cases."); *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 687 (D.C. Cir. 2005) ("It is axiomatic that an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so." (cleaned up)). SBA appears to acknowledge that it did not consider the application outcomes of MomoCon's supposed competitors in coming to its decision on MomoCon's application. *See* Defs.' Opp'n & Mem. at 18 ("MomoCon's competitors' applications were not considered by the SBA when it reevaluated MomoCon's application; rather, the SBA reviewed MomoCon's application on its own sufficiency to determine whether its primary business activities were live performances."). And SBA does not argue in its briefs that MomoCon is sufficiently different from the competitors such that comparison with the competitors' application results is irrelevant.

The remaining question, therefore, is whether the agency was required to consider these competitors at all. "The APA limits judicial review to the administrative record 'except when

---

Rescission of funds granted to MomoCon's competitors would moot this ground for challenging the denial of MomoCon's application, but mere uncertain plans to do so in the future do not.

there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review.'" *Theodore Roosevelt Conservation P'ship*, 616 F.3d at 514 (internal quotation marks omitted) (quoting *Com. Drapery Contractors, Inc.*, 133 F.3d at 7). Although the parties disagree about whether there is sufficient evidence in the administrative record regarding the supposed competitors' similarity, MomoCon does not explicitly ask to supplement or go beyond the administrative record. Regardless, the administrative record is sufficient to show that the supposed competitors may be similar to MomoCon such that SBA must explain the different application outcomes to avoid making an arbitrary and capricious decision.

      SBA gives two arguments in favor of its decisionmaking with regard to the supposedly similar competitors. First, SBA claims that the administrative record "contains no supporting evidence, other than MomoCon's own statements, that similarly situated entities received SVOG funding and those awardees are similar to MomoCon." Defs.' Reply at 5. MomoCon's own statements are, according to SBA, "self-serving." *Id.*; *accord* Defs.' Opp'n & Mem. at 17 (referencing MomoCon's "own self-serving application materials that it performed activities similar to that of AWA and that the SBA awarded SVOG funds to AWA"); *id.* at 18 ("MomoCon's own statements regarding its competitor's business activities and SVOG awards, while part of the administrative record, were considered by the SBA in the lens presented—as self-serving statements made by MomoCon."). Regarding MomoCon's citations to, and quotes drawn from, the competitors' websites, SBA responds that the information about these competitors "was limited to what MomoCon knew, not what these companies' SVOG applications actually reflected." Defs.' Reply at 5. Second, and similarly, SBA argues that the competitors' application materials are not part of the administrative record. Defs.' Opp'n &

11

Mem. at 17; Defs.' Reply at 6.  Presumably, SBA is arguing that the competitors' application materials would need to be part of the administrative record to sustain an arbitrary-and-capricious challenge based on failure to treat similar entities similarly.  *See* Defs.' Reply at 6 ("MomCon lacks direct knowledge of the information that their competitors presented to the SBA.").

These arguments are not convincing.  First, SBA does not discuss at least some parts of the administrative record identified by MomoCon as demonstrating the competitors' similarity.  MomoCon cites a letter that it claims is from the "City of Atlanta's Convention and Visitor's Bureau" stating that "[t]here are no material difference between MomoCon and the competitors that were approved, including AWA, LLC," and a letter that it claims is from the "Metro Atlanta Chamber" stating, "We feel that there exist no significant differences between MomoCon and their competitor that was approved, AWA, LLC."  Pl.'s Reply Supp. Mot. Summ. J. & Opp'n Govt's Cross-Mot. Dismiss or for Summ. J. ("Pl.'s Reply & Opp'n") at 5, ECF Nos. 23 & 24; AR at 120, 288.  SBA does not address these letters specifically.  Without any response to evidence specifically called out in MomoCon's brief, the Court hesitates to discount its evidentiary value, and SBA's failure to consider it is arbitrary and capricious.  *See Mori v. Dep't of the Navy*, 917 F. Supp. 2d 60, 64–65 (D.D.C. 2013) ("By not discussing plaintiff's evidence, the Secretary leaves plaintiff and the Court to scratch their heads as to why the Secretary found plaintiff's evidence unpersuasive.  An agency action that lacks explanation is a textbook example of arbitrary and capricious action. . . .  If the Secretary is aware of the analogous circumstances plaintiff referenced but fails to distinguish them, the Secretary commits an arbitrary and capricious act.").

Second, SBA does not explain why it can ignore MomoCon's statements in its application because they are self-serving or not supported by further "documentary evidence." Defs.' Opp'n & Mem. at 17.  Specifically, the administrative record contains statements by MomoCon in one of its application documents identifying five organizations that MomoCon contends received SVOG funds (based on "the weekly publication from the SVOG datasets") and put on events that "are functionally identical to MomoCon."  AR at 86–87.  MomoCon states each organization's website, the amount of funds received, and some details comparing their events to MomoCon.  *See, e.g.*, *id.* at 86 (AWA LLC's event is "almost identical to MomoCon LLC," is MomoCon's competitor, and hires many of the same performers); *id.* (MAGFest, Inc's convention uses "an almost identical floorplan to MomoCon's" and "almost identical music lineups"); *id.* at 87 ("MomoCon hosts more content and performances" than Nostalgia Conventions).  No supporting documentation is cited beyond MomoCon's statements, but SBA does not explain why that is fatal.  These facts could be within MomoCon's knowledge given that the companies operate in the same industry and much of this information is publicly available.  *See, e.g.*, *Shuttered Venue Operators Grantees*, U.S. Small Bus. Admin., https://data.sba.gov/dataset/svog (linking to spreadsheet containing "Recipients of the Shuttered Venue Operators Grant").[3]  For these reasons, the administrative record shows that entities potentially similar to MomoCon have been treated dissimilarly, and SBA's failure to explain why they are dissimilar or otherwise treated dissimilarly was arbitrary and capricious.  *See Republic Airline Inc. v. U.S. Dep't of Transp.*, 669 F.3d 296, 300 (D.C. Cir. 2012) ("But where, as here, 'a party makes a significant showing that analogous cases have been decided differently,

---

[3] The parties agree that "[t]he Court may take judicial notice of information posted on official public websites of government agencies."  Defs.' Opp'n & Mem. at 3 n.2; *accord* Pl.'s Reply & Opp'n at 5; *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016).

the agency must do more than simply ignore that argument.'" (quoting *LeMoyne–Owen Coll. v. NLRB*, 357 F.3d 55, 61 (D.C. Cir. 2004))).

SBA's chief complaint seems to be that the competitors' applications were not in the administrative record, but it is not clear that MomoCon bears the blame for this absence. SBA surely has access to these applications, but the parties do not discuss whether they are publicly available. *Cf.* Pl.'s Notice of Filing Under Seal, ECF No. 27 (requesting, with SBA's consent, to file MomoCon's administrative record under seal, suggesting that similar records for competitors are not public); Pl.'s Notice of Filing Resp. Ct.'s Dec. 29, 2021 Min. Order, ECF No. 28 (filing redacted version of AR). Given SBA's insistence that the competitors' applications would need to be compared to MomoCon's to determine their similarity, that seems to be the logical path forward and entirely within SBA's power.[4] *See Muwekma Ohlone Tribe v. Kempthorne*, 452 F. Supp. 2d 105, 118–19, 125 (D.D.C. 2006) (ordering supplementation of administrative record after rejecting defendants' argument that Native American tribe cannot establish APA violation based on disparate treatment from other tribes because other tribes' administrative records were not before the court).

---

[4] Additionally, although the current administrative record does show that SBA was required to, but did not, explain the disparate outcomes, there also appears to be at least some justification for going beyond the administrative record based on evidence of "bad faith or improper behavior" or the record being "so bare that it prevents effective judicial review." *Theodore Roosevelt Conservation P'ship*, 616 F.3d at 514 (internal quotation marks omitted) (quoting *Com. Drapery Contractors, Inc.*, 133 F.3d at 7). For example, MomoCon cites a webinar on SVOG appeals in which the SBA stated that citing similar applicants who received different results will not be helpful. *See* Pl.'s Mem. at 10 n.1. SBA does not address this webinar in its briefs. Absent further explanation, it would appear to be bad faith to oppose MomoCon's motion due to the administrative record lacking competitor information if SBA discouraged MomoCon from including that information. However, it is not necessary to resolve this question because the administrative record here demonstrates that SBA acted arbitrarily and capriciously.

2. Principal Business Activity

SBA also acted arbitrarily and capriciously in its consideration of at least some of MomoCon's evidence. To survive the "narrow" review of the arbitrary and capricious standard, an "agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.*; *see also Borgess Med. Ctr. v. Sebelius*, 966 F. Supp. 2d 1, 5 (D.D.C. 2013) ("Under the arbitrary and capricious standard, an agency action 'may be invalidated . . . if [it is] not rational and based on consideration of the relevant factors." (alterations in original) (quoting *FCC v. Nat'l Citizens Comm. for Broad.*, 436 U.S. 775, 803 (1978))), *aff'd sub nom. Borgess Med. Ctr. v. Burwell*, 843 F.3d 497 (D.C. Cir. 2016).

The parties' chief dispute is whether MomoCon meets the "principal business activity" requirement. The statute imposes the requirement that an applicant, "as a *principal business activity*, organizes, promotes, produces, manages, or hosts live concerts, comedy shows, theatrical productions, or other events by performing artists." 15 U.S.C. § 9009a(a)(3)(A)(i)(I) (emphasis added). SBA found that MomoCon's primary activity was hosting a "fan-festival that focused on presenting exhibits, participatory events, and interactions with comics professionals, and to a far lesser extent, live performances." Defs.' Opp'n & Mem. at 14. Accordingly, SBA

15

denied MomoCon's application for failure to meet the "principal business activity" requirement. *See* AR at 1696 (SBA's application "declined" because MomoCon "[d]id not meet the principal business activity standard for the entity type under which applied"). SBA noted that, although "MomoCon does include a few bona fide performing arts events such as musical concerts, it is clear from the record that such events are minimal in number compared to other events at the convention, and they do not factor significantly in the way the convention is presented. These events represent a secondary or sideline activity rather than the principal business of the convention." *Id.* at 1696–97. The denial does not elaborate on SBA's reasoning, stating only that SBA's finding was based on "the record evidence, including MomoCon's own promotions materials" and "[a]fter a thorough and comprehensive review of [MomoCon's] appeal." *Id.* at 1696.

In its opening brief, SBA discusses at least two aspects of its analysis of MomoCon's evidence that betray SBA's arbitrary and capricious consideration of that evidence.[5] First, SBA argues that MomoCon did not provide live performances as a primary business activity because the record "show[s] that it engaged in contracts with nine performers for approximately nine hours[] over the course of the four-day annual event (approximately 48 hours)," meaning "live performances constituted just 15% of the total time MomoCon provided to its attendees." Defs.'

---

[5] It is unclear whether the Court can even rely on these explanations given that they are not in the Administrative Record and therefore resemble impermissible post-hoc rationalizations. *See Delta Air Lines, Inc. v. Exp.-Imp. Bank of U.S.*, 85 F. Supp. 3d 436, 448 (D.D.C. 2015) ("[*P*]ost-hoc rationalizations 'have traditionally been found to be an inadequate basis for review' of agency decisions." (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971))); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020) ("The basic rule here is clear: An agency must defend its actions based on the reasons it gave when it acted."). Nonetheless, the Court reviews them because consideration of these arguments could only help SBA. Without them, SBA would have presented almost no substantive argument attempting to demonstrate how it arrived at its principal-business-activity conclusion in a way that was not arbitrary or capricious.

Opp'n & Mem. at 15; *accord id.* at 20 ("The nine live performance contracts represented a very small percentage in time and total costs of MomoCon's predominant activity—the organization and promotion of a fan convention."). But, in response, MomoCon points to its statement in the record that these nine contracts "represent *some* of the headlining talent at MomoCon 2019." AR at 64 (emphasis added); Pl.'s Reply & Opp'n at 8. MomoCon also points to its "need statement," which says that MomoCon "hosts over 800 hours of live concerts, performances, amateur theatrical productions, and other events including cultural programs promoting both Japanese and American artistic works." AR at 1547; Pl.'s Reply & Opp'n at 7. SBA's response is essentially that these are "self-serving statements" that SBA need not consider, as opposed to the contracts which it did consider. *See* Defs.' Reply at 9–10. But SBA cites no authority requiring applicants to submit contracts justifying every live performance considered for the "principal business activity" inquiry. SBA calculates a percentage of time devoted to live performances based on numbers that, according to MomoCon, are necessarily too low. Regarding MomoCon's argument that it hosts "over 800 hours of live performances," Pl.'s Reply & Opp'n at 6, SBA counters that the 800-hour number used in the administrative record also includes "other events including cultural programs promoting both Japanese and American artistic works," which may not be live performances, Defs.' Reply at 9. That is true, but it would require a strained reading of that sentence: according to SBA, of the 800+ hours, 9 hours are covered by at least three of the four categories listed—"live concerts, performances, amateur theatrical productions," and "other events" that constitute live performances—while over 791 hours are devoted to a subset of one of the four categories—"other events" that do not constitute live performances. *See id.* Without further explanation, that is not a reasonable interpretation of MomoCon's statement. *See State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43 (agency explanation cannot be "so

17

implausible that it could not be ascribed to a difference in view or the product of agency expertise"). Accordingly, without authority supporting SBA's decision to ignore MomoCon's statements, SBA's conclusion that there were only nine live performances over nine hours is an arbitrary and capricious interpretation of the record because it runs counter to the evidence before the agency. *See id.*

Second, SBA argues that "the amount of money MomoCon spent on its fandom activities versus the amount MomoCon spent on live performances" shows "that live performers constituted only a small portion of its overall activities." Defs.' Opp'n & Mem. at 16. Namely, contracting for the venue cost ▮▮▮▮▮▮▮ while the nine contracts for live performances cost ▮▮▮▮▮. *Id.* According to SBA, this shows "that live performers constituted only a small portion of [MomoCon's] overall activities." *Id.* This is arbitrary and capricious at least for the same reason as above because it also relies on the nine contracts as being the entirety of MomoCon's live performances. Additionally, as MomoCon points out, this comparison ignores that the venue cost is part of the cost of putting on live performances, including the performance space, security personnel, sound systems, lighting systems, "and a custom built stage," and therefore at least some of this cost should be combined with the performance contracts to evaluate MomoCon's focus on live performances. Pls.' Reply & Opp'n at 9. SBA tries to salvage its reasoning by arguing that the venue "contract in totality" should not be combined with the performance contracts because only two spaces in the venue were used for live performances and MomoCon did not explain which portions of the venue contract were related to live performances. Defs.' Reply at 11. SBA may be correct, but SBA's opening brief indicates that it reasoned that no part at all of this cost went toward supporting live

18

performances, which is not accurate. This was therefore an arbitrary and capricious interpretation of the record. *See State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43.

* * *

MomoCon raises other issues with the application process—such as SBA's denial stating that MomoCon did not qualify as a "live performing arts organization operator" despite MomoCon changing its category to "live venue promoter" during appeal, as apparently permitted by SBA, Pl.'s Mem. at 11; Pl.'s Reply & Opp'n at 6 n.4—but the above is enough to warrant remand to SBA. Similarly, it is unnecessary to evaluate MomoCon's separate (and minimal) arguments that SBA's denial was contrary to law or not supported by substantial evidence. *See* Pl.'s Mem. at 16.

The Court is cognizant that it must not "substitute its judgment for that of the agency," *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43, "especially with respect to matters relating to an agency's areas of technical expertise," *Friends of Animals v. Ross*, 396 F. Supp. 3d 1, 7 (D.D.C. 2019) (quoting *Fox v. Clinton*, 684 F.3d 67, 75 (D.C. Cir. 2012)); *see also* Defs.' Opp'n & Mem. at 14–15 ("SBA is drawing from its years of experience in ascertaining a firm's primary industry under the SBA size regulations (13 C.F.R. § 121.107) to define 'principal business activity.'"). And SBA may ultimately come to the same conclusion on remand. But based on the current record and the parties' arguments, SBA acted arbitrarily and capriciously in denying MomoCon's application.

"When an agency provides a statement of reasons insufficient to permit a court to discern its rationale, or states no reasons at all, the usual remedy is a 'remand to the agency for additional investigation and explanation.'" *Tourus Recs., Inc. v. Drug Enf't Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also*

*N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012) ("When a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency, because the role of the district court in such situations is to act as an appellate tribunal."). Here, remand for additional investigation—including supplementation of the record as necessary—and explanation is warranted.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (ECF No. 19) is **GRANTED** and Defendants' motion to dismiss and, in the alternative, for summary judgment (ECF No. 21) is **DENIED**.  This case is **REMANDED** to the SBA for supplementation of the administrative record as necessary regarding MomoCon's competitors and further proceedings consistent with this opinion.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 10, 2022                                                                       RUDOLPH CONTRERAS
                                                                                                                    United States District Judge